UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

PAMELA A. GIRAUD,                                                      :

                                        Plaintiff,                    :

            - against -                                               :

BOARD OF EDUCATION, NEWBURGH                                          :
ENLARGED CITY SCHOOL DISTRICT,                                        :

                                        Defendant.                    :

------------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: ___7/17/13___

**<u>OPINION AND ORDER</u>**
12-CV-1842 (ER)

<u>Ramos, D.J.</u>:

Plaintiff Pamela A. Giraud ("Plaintiff" or "Giraud") brings this action against Defendant

Board of Education, Newburgh Enlarged City School District ("Defendant" or the "District")

pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-12117,

and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-297,

alleging retaliation for sending a letter to the District raising allegations of discrimination.

Revised First Amended Complaint ("Rev. Am. Compl.") (Doc. 17-1.)[1] Pending before the Court

is Plaintiff's motion to amend the complaint. (Doc. 12.) For the reasons set forth below,

Plaintiff's motion is GRANTED.

## I.   Factual Background

The following facts, which are taken from the Revised First Amended Complaint, are

assumed to be true for purposes of this motion.[2]

---

[1] Although Defendant did not have the opportunity to respond to Plaintiff's Revised First Amended Complaint, filed
as an exhibit to Plaintiff's Reply brief and identical to the First Amended Complaint except for the addition of
paragraphs 28(a) and 28(b), because the changes made to the First Amended Complaint do not affect the Court's
opinion, all citations to the amended complaint at issue will be to this Revised First Amended Complaint.

[2] As is required on a motion pursuant to Rule 12(b)(6), the factual allegations in the Revised First Amended
Complaint, though disputed by Defendant, are assumed as true for purposes of this motion, and all reasonable
inferences are drawn therefrom in favor of Plaintiff. *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108
(2d Cir. 2010). The facts recited above do not constitute findings of fact by this Court.

Plaintiff, a resident of Wallkill, New York, is a speech and language pathologist licensed by the State of New York. Rev. Am. Compl. ¶ 4. Since 1990, Plaintiff has provided speech and language pathology services from an office located within Bishop Dunn Memorial School ("Bishop Dunn"), a private school located in Newburgh, New York. *Id.* ¶ 6. Defendant is the governing body of the Newburgh Enlarged City School District, located in Newburgh, New York. *Id.* ¶ 5.

From 1990 to 2007, Plaintiff received payment for her services directly from Bishop Dunn for those students enrolled at Bishop Dunn who were parentally-placed non-resident ("PPNR") students. *Id.* ¶ 7. Bishop Dunn, in turn, billed the districts of residence for Plaintiff's services. *Id.* Beginning in the school year 2007-2008, a change in the New York State Education Law made Defendant the "district of location" for the PPNR students at Bishop Dunn. *Id.* ¶ 8. As a result, "Defendant became responsible for the payment for Plaintiff's services to these students" and "would then, and has continued to date, charge the resident school district for these costs." *Id.* For the duration of Plaintiff's two-decade-plus career, she was paid in the "same manner and amount for her services." *Id.* ¶ 9. Payments were also "adjusted for increases based on years of service and consistent with the prevailing compensation models and rates for similarly-situated public school service providers." *Id.*

On August 9, 2011, Kenneth Swanson, Defendant's Executive Director of Special Education, asked Plaintiff if she would "accept additional responsibility for the four students at Bishop Dunn who were Defendant residents." *Id.* ¶ 10. Plaintiff accepted this assignment. *Id.* Although Swanson explained that this would involve "some billing changes (i.e. that for these Defendant-resident students Plaintiff would be paid directly by the School District)," Swanson informed her that "everything was staying 'exactly the same' regarding her rates and model of

2

compensation." *Id.*

On August 18, 2011, Plaintiff was advised that she would be paid for her services henceforth as an employee of Ulster BOCES, but that everything would remain the same, including the rates and model of compensation. *Id.* ¶ 11.  Plaintiff was asked, however, to engage in the "formality" of an application and an interview with Ulster BOCES. *Id.*  Plaintiff was also asked to continue her work for Defendant while the pro forma proceedings were concluded. *Id.* ¶ 12.  Plaintiff claims that she did not pursue alternative work or sources of income for the 2011-2012 school year because she relied on these promises and assurances. *Id.* ¶ 13.

On August 30, 2011, Plaintiff interviewed with Ulster BOCES. *Id.* ¶ 14.  She appeared at the meeting using a walker and revealed that she had been diagnosed with multiple sclerosis. *Id.* ¶ 15.  In the meantime, the school year began on September 7, 2011, and Plaintiff continued to provide the requested services for Defendant's students. *Id.* ¶ 16.  On September 15, 2011, Plaintiff was advised that her services were being terminated effective September 30, 2011. *Id.* ¶ 17.  Plaintiff does not specifically allege which entity (i.e. Bishop Dunn, Ulster BOCES, or Defendant) terminated her.  In a letter dated September 26, 2011, Plaintiff made a "charge of discrimination" against Defendant relating to her termination. *Id.* ¶ 18.

Thereafter, in or about early October 2011, Mary Ellen Leimer, Defendant's Assistant Superintendent for Human Resources, advised Plaintiff that Defendant would hire her directly as a "substitute" during an interim period until Defendant formally filled the position. *Id.* ¶ 19.  Plaintiff claims that she was "reassured that if and when she was formally hired in the position she would be reimbursed all of her lost wages because of the low substitute teacher rate she would be paid during the interim period." *Id.*  It is further alleged that on October 11, 2011,

Ulster BOCES advised Plaintiff that they would not be serving as intermediary and that Plaintiff's "status and all relevant discussions regarding her claims would be directly with Defendant." *Id.* ¶ 20.

On or about October 21, 2011, Plaintiff interviewed for the position and completed follow-up paperwork on October 24, 2011. *Id.* ¶ 21. On October 24, 2011, Leimer met with Plaintiff and offered her the position pending Board of Education approval. *Id.* ¶ 22. Plaintiff alleges that she was advised that her rate of pay would be at the lowest available steps and dramatically reduced from what she had historically been compensated for her services. *Id.* Plaintiff further alleges that when she questioned this proposal, Leimer "repeatedly goaded" her, "stating repeatedly words to the effect of: 'You don't want the job?'" *Id.*

Nonetheless, Plaintiff continued to provide her services and on or about October 26, 2011, Defendant approved her retention. *Id.* ¶¶ 23-24. However, Plaintiff's compensation for the 2011-2012 school year represents a decrease in pay totaling $35,000. *Id.* ¶ 25. Plaintiff claims, upon information and belief, that she is the lowest paid speech pathologist within the School District. *Id.* ¶ 26. She also claims that Defendant is charging the resident school districts of Plaintiff's PPNR students at a rate "consistent with what Plaintiff has been historically paid, which is [a] significantly lower rate than what Defendant is paying Plaintiff for those services." *Id.* ¶ 27. Historically, Plaintiff was compensated one-hundred percent of the amount Defendant charged the resident school districts. *Id.* ¶ 28.

Moreover, Plaintiff alleges that the initial placement of a teacher as to step and salary schedule is made by the Superintendent of Schools or his designee after an evaluation of the teacher's "training and previous experience in teaching a related activity and military service." *Id.* ¶ 28(a). Plaintiff alleges, upon information and belief, that every new hire within the School

District, with the exception of Plaintiff, has been given credit for their years of prior relevant experience, including credit for private sector experience. *Id.* ¶ 28(b).

On July 10, 2012, Plaintiff filed a charge of disability discrimination against Defendant with the U.S. Equal Employment Opportunity Commission (EEOC).[3] *Id.* ¶ 36. In or about August 2012, Plaintiff attempted to meet with officials of the Defendant to discuss details of the upcoming school year, such as her assignments and rate of pay. *Id.* ¶ 29. Plaintiff alleges, however, that Defendant has failed and refused to meet with her regarding any issues arising out of her employment. *Id.* ¶ 31. Furthermore, Plaintiff claims to have been advised that officials of the Defendant would only speak to her if she were to "drop the lawsuit." *Id.* ¶ 33. Plaintiff alleges that Defendant implemented its policy of refusing to meet with her "explicitly in retaliation for Plaintiff bringing the instant suit." *Id.* ¶ 32.

Based on the foregoing facts, Plaintiff alleges that Defendant violated the ADA and NYSHRL by retaliating against Plaintiff because "she engaged in protected activities related to her disability, her record of disability and/or because of Defendant's perception that Plaintiff is disabled." *Id.* ¶¶ 49-50.

## II.  Procedural History

Plaintiff commenced the instant action on February 23, 2012 in the Supreme Court of the State of New York, County of Orange. (Doc. 1.) On March 13, 2012, Defendant removed the case to this Court based on a single federal law claim under the Equal Protection Clause of the Fourteenth Amendment. (Doc. 1.) On September 5, 2012, Plaintiff stipulated to the dismissal of her Equal Protection claim. (Doc. 10.) On November 30, 2012, Plaintiff filed the instant motion to amend the complaint to include a federal claim of retaliation under the ADA. (Doc. 12.)

---

[3] The EEOC issued Plaintiff a Notice of Right to Sue on October 19, 2012. Rev. Am. Compl. ¶ 37.

Plaintiff included a Proposed First Amended Complaint as an exhibit to her motion. (Doc. 13-1.) Defendant filed its opposition papers on January 4, 2013, Doc. 15, and on January 25, 2013, Plaintiff filed her reply papers, which included as an attachment a Revised First Amended Complaint, Doc. 17. *See supra* n.1.

## III.    Applicable Legal Standards

### a.    Motion to Amend Pursuant to Federal Rule of Civil Procedure 15(a)

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend a party's pleading shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, courts generally grant leave to amend "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000). The Second Circuit has repeatedly noted that the trial court has broad discretion in ruling on a motion to amend. *See, e.g., Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000); *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998); *Guzman v. Bevona*, 90 F.3d 641, 649 (2d Cir. 1996).

A proposed amendment is futile when it fails to state a claim. *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here, as here, there is no merit in the proposed amendments, leave to amend should be denied.") (citation omitted). Accordingly, if the amendment would not survive a motion to dismiss, leave to amend should not be granted. *Prudential Ins. Co. of Am. v. BMC Indus., Inc.*, 655 F. Supp. 710, 711 (S.D.N.Y. 1987). Therefore, when determining whether leave to amend a complaint should be granted, district courts apply the same legal standard as applied on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *MacEntee v. IBM (Int'l Bus. Machs.)*, 783 F. Supp. 2d 434, 446

(S.D.N.Y. 2011), *aff'd*, 471 F. App'x 49 (2d Cir. 2012); *Journal Publ'g Co. v. Am. Home Assurance Co.*, 771 F. Supp. 632, 635 (S.D.N.Y. 1991).

### b.  Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc.*, 624 F.3d at 108.  However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8 and survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Though a plaintiff may plead facts alleged upon information and belief "where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be "'accompanied by a statement of the facts upon which the belief is founded.'" *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006) (citation omitted); *see also Williams v. Calderoni*, No. 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)

(finding pleadings based upon information and belief insufficient where plaintiff pointed to no information that would render his statements anything more than speculative claims or conclusory assertions).  A complaint that "tenders naked assertions devoid of further factual enhancement" will not survive a motion to dismiss under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted) (brackets omitted).

With respect to employment discrimination cases, in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), which preceded *Twombly* and *Iqbal*, the Supreme Court rejected a heightened pleading standard and held that a plaintiff alleging employment discrimination need not plead facts establishing a *prima face* case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),[4] to survive a motion to dismiss.  *See Swierkiewicz*, 534 U.S. at 510-11.  Rather, "the ordinary [pre-*Twombly*] rules for assessing the sufficiency of a complaint apply."[5] *Id.* at 511.

Because *Swierkiewicz* came before *Twombly* and *Iqbal*, and therefore relied on the notice pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), the Second Circuit recently stated that "[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit." *Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012) (summary order).  Although it has declined to resolve this open question, the

---

[4] Under the *McDonnell Douglas* framework, to make out a *prima facie* case of retaliation under the ADA, a plaintiff must show that as an employee: (1) she was engaged in an activity protected by the ADA; (2) her employer was aware of that activity; (3) an employment action adverse to the plaintiff occurred; and (4) there existed a causal connection between the protected activity and the adverse employment action. *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48-49 (2d Cir. 2002) (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (applying the *McDonnell Douglas* legal framework to claims of retaliation pursuant to the ADA)).  Courts also apply the *McDonnell Douglas* framework to analyze claims under the NYSHRL. *See, e.g., Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 109 (2d Cir. 2011) (applying *McDonnell Douglas* framework to Title VII, ADEA and NYSHRL claims).

[5] The Second Circuit has held that "[t]he *Swierkiewicz* holding applies with equal force to any claim . . . that the *McDonnell Douglas* framework covers." *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (quoting *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) (per curiam)).  Accordingly, as discussed *supra* n.4, *Swierkiewicz* applies to all of Plaintiff's retaliation claims.

Second Circuit has held that "at a minimum, employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal*, even if pleading a *prima facie* case is not required." *Id.* Accordingly, "[r]econciling *Swierkiewicz*, *Twombly*, and *Iqbal*, a complaint need not establish a *prima facie* case of employment discrimination . . . [but] must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (quotation marks and citation omitted).

Although plaintiffs alleging employment discrimination need not plead a *prima facie* case, the elements of a *prima facie* case do "provide an outline of what is necessary to render [a plaintiff's employment discrimination or retaliation] claims for relief plausible." *Pahuja v. Am. Univ. of Antigua*, No. 11 Civ. 4607 (PAE), 2012 WL 6592116, at *9 (S.D.N.Y. Dec. 18, 2012) (quoting *Sommersett v. City of N.Y.*, No. 09 Civ. 5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011)). Courts therefore "consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests." *Id.* (quoting *Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10 Civ. 0251 (LDW) (AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011)).

### c.  Extrinsic Materials

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein. *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007). The court, however, may consider a document that is attached to the complaint or a document that is incorporated by reference in the complaint. *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). Where a document is not incorporated by reference, the court may nevertheless

9

consider it where the complaint "relies heavily upon its terms and effect," thereby rendering it

"integral" to the complaint. *Id.* (quotation marks and citation omitted). However, even if a

document is "integral" to the complaint, a court may only consider it if there is no dispute

regarding its authenticity, accuracy or relevance. *Id.*

Where other extrinsic materials are submitted to the court for consideration in connection

with a Rule 12(b)(6) motion, however, the court must either exclude the additional materials and

decide the motion on the complaint alone, or convert the motion to one for summary judgment

under Fed. R. Civ. P. 56 and afford the parties the opportunity to submit additional supporting

materials. Fed. R. Civ. P. 12(d); *see also Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000).

Here, Plaintiff has submitted an affidavit along with a section of the collective bargaining

agreement between Defendant and Plaintiff's union. Defendant has also submitted several

documents; specifically, an affidavit by Ms. Leimer, which attaches Plaintiff's September 26,

2011 letter alleging discrimination, meeting minutes, and e-mails. However, since the purpose

of a Rule 12(b)(6) motion is to test the legal sufficiency of the pleadings without considering the

substantive merits of the case, *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155

(2d Cir. 2006), and neither party has pointed to any authority suggesting that the Court may

consider these extrinsic materials, the Court has not considered any of the additional documents

submitted by either party in ruling on the instant motion.

## IV.     Plaintiff is Granted Leave to Amend her Complaint

The ADA precludes an employer from retaliating on the basis of an individual's

disability. 42 U.S.C. § 12112(a). To establish a *prima facie* case of retaliation under the ADA, a

plaintiff must show that: (1) she was engaged in an activity protected by the ADA; (2) the

employer was aware of that activity; (3) the employer took adverse employment action against

her; and (4) a causal connection exists between the protected activity and the alleged adverse employment action. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

Here, it is evident that Plaintiff has satisfied the first two elements of an ADA retaliation claim. First, it is clearly established that informal protests of discriminatory employment practices, such as making complaints to management, are protected activities. *See Treglia*, 313 F.3d at 720 (alleged complaints to a superior, filing of federal and state administrative charges, and efforts to investigate claims are protected activities); *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (protected activities include making informal complaints to management). In this case, Plaintiff complained that she was being discriminated against in a letter to the District. Accordingly, she has satisfied the first element of an ADA retaliation claim. Second, Plaintiff's employer was aware of this activity, as Defendant does not dispute that it received the letter.

As to the third element, Plaintiff must allege that her employer took adverse employment action against her. This element requires a "materially adverse change in the terms, privileges, duration and conditions of employment." *Treglia*, 313 F.3d at 720. Adverse employment action may include, *inter alia*, "a termination of employment, a demotion evidenced by a decrease in pay or salary, a less distinguished title, [or] a material loss of benefits." *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011) *(*quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)); *see also Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (defining adverse action to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand"), *abrogated on other grounds by Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012). Plaintiff's alleged dramatic reduction in pay qualifies as

a "materially adverse change" in the terms and conditions of her employment.

Although the Court notes that it is unclear from Plaintiff's allegations whether she was directly employed by Defendant prior to October 2011 when Defendant hired her at a rate of pay lower than what she had historically been compensated,[6] Plaintiff does allege that she was directly paid by Defendant for the services she provided to four Defendant-resident students at Bishop Dunn beginning in early August 2011. Accordingly, drawing all reasonable inferences in Plaintiff's favor, as the Court is required to do, it is reasonable to infer from Plaintiff's allegations that Plaintiff was employed by Defendant prior to October 2011. Thus, Plaintiff has alleged sufficient facts from which to infer that Defendant took an adverse employment action against Plaintiff by reducing her pay in October 2011.[7]

Plaintiff has also established the fourth element of her ADA retaliation claim. In order to satisfy this last element, a plaintiff must show that the allegedly adverse action occurred under circumstances from which a retaliatory intent could reasonably be inferred. *Treglia*, 313 F.3d at 720. A close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse employment action can be sufficient to establish causation. *See Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.") (internal quotation marks and citation omitted). The Second Circuit has indicated that a two-month lapse between the protected activity and allegedly adverse action

---

[6] The Revised Amended Complaint does not explicitly identify Defendant as Plaintiff's employer prior to Defendant formally hiring Plaintiff on October 26, 2011.

[7] Defendant's refusal to meet with Plaintiff regarding any issues arising out of her employment does not qualify as "adverse employment action," as this alleged act does not materially change the terms, privileges, duration or conditions of Defendant's employment. *See Treglia*, 313 F.3d at 720. Therefore, although Plaintiff alleges that Defendant instituted a policy of refusing to meet with her in retaliation for bringing the instant suit, Rev. Am. Comp. ¶ 32, because the alleged policy does not constitute an "adverse employment action," Plaintiff may not proceed with a retaliation claim on this basis.

is sufficient to establish this fourth causation element. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In this case, the alleged adverse employment action occurred less than two months after Plaintiff filed her letter with the District claiming discrimination. Plaintiff has therefore sufficiently alleged a causal connection between her protected activity and her subsequent reduction in pay.

Accordingly, Plaintiff has alleged a plausible retaliation claim, and her motion to amend the complaint is therefore GRANTED.

## V.   **Conclusion**

For the reasons set forth above, Plaintiff's motion for leave to amend the complaint is GRANTED. The third cause of action of the Revised First Amended Complaint is construed to assert a claim for retaliation under the ADA and NYSHRL, and the Revised First Amended Complaint is the operative pleading in the case. The Clerk of the Court is respectfully directed to terminate this motion. (Doc. 12.)

It is SO ORDERED.

Dated:   July 17, 2013
         New York, New York

Edgardo Ramos, U.S.D.J.